UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| VS. | ) AU-17-CR-301-XR |
| | ) |
| MICHAEL HERMAN AND | ) |
| CYNTHIA HERMAN | ) |

# ORDER

Michael and Cynthia Herman are married and reside together within the Western District of Texas. From 2005 through 2015, the Hermans owned and operated Cindy's Gone Hog Wild, a restaurant and bar in Travis County, Texas. The Hermans incorporated the business and reported its income and expenses on IRS Forms 1120.

In addition to Cindy's Gone Hog Wild, from about 2009 to about 2014, the Hermans owned and operated two restaurants in Bastrop County, Texas: Cindy's Downtown and Hasler Brothers Steakhouse. The Hermans operated those two businesses under Cindy's Downtown, LLC, which reported its income and expenses on the Hermans' IRS Forms 1040.

In Count One of the Indictment the Government alleges that the Hermans conspired to defraud the United States in violation of 18 U.S.C. § 371. In support of this allegation, the Government alleges that the Hermans concealed the true income of their businesses by depositing only a portion of the businesses' cash receipts into their business bank accounts and reported as income to their tax return preparer only those smaller amounts. The Government also alleges that the Hermans caused tax deductions for business expenses to be overstated by paying various personal expenses with business funds. The Government also alleges that the Hermans regularly paid third-parties, adding those

1

individuals to the payroll of Cindy's Downtown, LLC, even though those persons performed no work for the company.

In Count Two of the Indictment, the Government alleges that the Hermans filed a false IRS Form 1040 for the 2010 tax year in violation of 26 U.S.C. § 7206(1). The Government alleges that the gross receipts from Cindy's Downtown, LLC were substantially more than the reported amount of $1,033,815, and the incurred total expenses were substantially less than the reported amount of $413,427.

In Count Three, the Government alleges that the Hermans filed a false 2011 return. Count Four alleges that the Hermans filed a false 2012 return. Count Five alleges that Michael Herman filed a false 2010 return for Cindy's Gone Hog Wild, Inc. Count Six alleges that Michael Herman filed a false 2011 return for Cindy's Gone Hog Wild, Inc. Count Seven alleges that Michael Herman filed a false 2012 return for Cindy's Gone Hog Wild, Inc.

## Defendants' motions to preclude the Government from introducing expert testimony through its case agent Daniel Fannin (docket nos. 70, 72 and 77)

Defendants argue that Special Agent Fannin is not qualified to render expert testimony in this case. Alternatively, the Defendants argue that having the case agent serve in these dual capacities is prejudicial. In addition, the Defendants argue that allowing the case agent to testify as an expert in this case will allow impermissible hearsay to be injected into the trial, because Special Agent Fannin's summaries incorporate statements of third parties. Lastly, the Defendants argue that the failure to clearly distinguish between fact and expert testimony will likely confuse the jury.

The Government contends that although Special Agent Fannin is also a CPA, his expected testimony should not be viewed as expert testimony. The Government "plans to call SA Fannin to testify at trial to summarize voluminous bank and point-of-sale records of the defendants' businesses. This will lead to SA Fannin's computations summarizing the gross receipts the Hermans underreported on the tax

returns related to their businesses, in addition to summarizing records reflecting the Hermans' use of business receipts to pay for personal expenses. SA Fannin will further testify as to the tax consequences of the Herman's actions."

Defendants' objections to the use of any "summary" evidence lack merit and are overruled. *See United States v. Echols*, 574 F. App'x 350, 356 (5th Cir. 2014) (allowing case agent's testimony and Fed. E. Evid. 1006 material). In this case the Government repeatedly states it will not be offering SA Fannin as an expert witness, even though it could under *United States v. Moore*, 997 F.2d 55 (5th Cir. 1993). His expected testimony is not impermissible, and the motion is denied. SA Fannin, however, may not opine on the tax consequences of the Hermans' actions, except to indicate what line numbers on the tax returns or schedules are incorrect. Accordingly, Defendants' motions to preclude Fannin from testifying and motions in limine to exclude Fannin from offering "summary" evidence is granted in part and denied in part (docket no. 70, 72 and 77).

### Defendants' Motions to Dismiss Counts 2 and 3 (docket nos. 71 and 74)

Defendants move the court to dismiss counts 2 and 3 arguing they allege more than one crime and are defective on grounds of duplicity. They argue "both counts each allege two false statements that are conceptually distinct and require distinct proof." Specifically, they appear to complain that each count alleges that gross sales were under-reported and total expenses were under-reported. Defendants' motions are denied. The Government charged only one crime in each count of the indictment. As stated by the Eighth Circuit, "[t]here may be more than one piece of evidence to support each count, but that certainly does not make the counts duplicitous." *United States v. Fairchild*, 819 F.3d 399, 412 (8th Cir. 2016). The motions are denied (docket nos. 71 and 74).

### Defendants' Motions to Dismiss Count One of the Indictment for Failure to State a Claim (docket nos. 73 and 76)

Defendants argue that *Marinello v. United States*, 138 S. Ct. 1101 (2018) mandates the dismissal of count one. In *Marinello*, the Supreme Court interpreted 26 U.S.C. § 7212(a) and concluded that "to secure a conviction under the Omnibus Clause [of that statute], the Government must show (among other things) that there is a 'nexus' between the defendant's conduct and a particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action." *Id*. at 1109. "In addition to satisfying this nexus requirement, the Government must show that the proceeding was pending at the time the defendant engaged in the obstructive conduct or, at the least, was then reasonably foreseeable by the defendant." *Id*. at 1110. Defendants argue that "it is now clear that with regard to 'obstruction conviction[s], the government would need to prove beyond a reasonable doubt that a person, acting with corrupt intent, engaged in obstructive conduct with a sufficient nexus to a pending or contemplated proceeding.'" Defendants further argue that the Indictment fails to include this essential element. This Court rejects Defendants' argument for the same reasons as stated by the Court in *United States v. Flynn*, No. CR 16-347 ADM/KMM, 2019 WL 135701, at *7 (D. Minn. Jan. 8, 2019). The limitations on the substantive offense of 26 U.S.C. § 7212(a) do not apply to *Klein* conspiracies charged under the general conspiracy statute of 18 U.S.C. § 371. *See also United States v. Parlato*, No. 15-CR-149-FPG, 2019 WL 988450, at *2 (W.D.N.Y. Mar. 1, 2019) (declining to apply *Marinello* to a statute the Supreme Court did not consider). The motions are denied (docket nos. 73 and 76).

**Defendants' Motions in Limine (docket nos. 85 and 88)**

Defendants seek to preclude the Government from mentioning the following in front of the jury: (1) the Hermans' assets, purchases or "lifestyle" as irrelevant and prejudicial; (2) whether the Hermans operated "beer troughs"[1] at their businesses because the Government never made such an allegation in the indictment and there is no evidence that Mr. Herman failed to report sales from the beer troughs to

---
[1] A stainless-steel tub or trough that is filled with ice and beer.

the IRS; (3) that employees of the business under-reported the amount of cash tip income they received; (4) that state of Texas auditors found that the Hermans owed state sales taxes; (5) opinion testimony from Government witnesses that the Hermans "knowingly and willfully" committed the offenses charged in the indictment as impermissible mental state testimony that is an ultimate issue for the jury; (6) the word scheme; (7) the Hermans' 2016 book titled The Restaurant Business, No Sugar Added as not relevant to the acts and timeframe in the indictment and prejudicial under Fed. R. Evid. 403 because of the Hermans' criticism of IRS employees; (8) phone calls between Michael Herman and a friend of his, who is incarcerated in a state jail; and (9) statements made by Cindy Herman to an undercover agent because those statements were not made in furtherance of any conspiracy charged in the indictment.

The Government responds: (1) if the income the Defendants reported on their tax returns appears insufficient to support their expenses, their lifestyle would be probative of both the falsity of the tax returns and the Defendants' awareness of that falsity; (2) Mr. Herman initially recorded beer sales in the restaurants' point of sale system, but later accepted only cash for beer sales, and that such evidence is admissible to prove motive, intent, plan and absence of mistake; (3) it stipulates that it does not intend to introduce evidence of an alleged tip scheme in its case-in-chief; (4) although it does not intend to introduce any evidence that the Defendants actually did have a state tax deficiency, it does intend to introduce evidence that Mr. Herman lied to the state auditor regarding the availability of certain business sales records and that such evidence is relevant to his state of mind and intent to file false tax returns; (5) it stipulates that it does not intend to ask any of its witnesses to opine on the Defendants' mental state; (6) it stipulates it will not use the word "scheme"; (7) Defendants' book notes that "more often than not, the cash drawer is not reported. The state knows but takes no action" and that such a statement is probative of their overall state of mind regarding their tax obligations and the tax system in general; (8) Mr. Herman's recoded calls with an undercover IRS agent contain "some" relevant conversations; and (9) Ms. Herman statement to an undercover agent that there would not be

any paper trail regarding cash sales is relevant inasmuch as it indicates her awareness of the conspiracy. The Defendants' motions are granted in part and denied in part as stated in open court on April 23, 2019.

**Government's motion in Limine (docket no. 95)**

The Government seeks to exclude the testimony of William Brown, a CPA retained by the Defendants. It is expected that Mr. Brown will testify that based upon his review of the documents in this case, the Government has overstated the gross receipts of the businesses and the Government has failed to recognize that some business-related expenses were paid from the Hermans' personal funds, and accordingly the amount of taxes due and owing is not as large as the Government believes.

The Government objects to the testimony as not relevant. Given that the indictment in this case alleges that the Hermans underreported gross receipts or sales and overrepresented business expenses, and *Neder v. United States*, 119 S. Ct. 1827, 1837 (1999) provides that materiality is an essential element of this crime, Mr. Brown's testimony is arguably relevant. Mr. Brown may testify that certain transactions that the Government contends should be considered gross receipts or sales are in fact not gross receipts or sales. Likewise, Mr. Brown may testify that certain transactions that the Government contends are not business expenses are in fact legitimate business expenses. Mr. Brown, however, may not opine on what the amended amount of taxes should be. This is not a tax court case wherein the amount of taxes due and owing are in dispute. Further, Mr. Brown may not opine that the Hermans should have included other expenses paid from personal accounts as business expenses. The Government's motion is granted in part and denied in part.

**Conclusion**

Defendants' motions to preclude Fannin from testifying and motions in limine to exclude Fannin from offering "summary" evidence is granted in part and denied in part (docket no. 70, 72 and 77).

Defendants' Motions to Dismiss Counts 2 and 3 (docket nos. 71 and 74) are denied.

Defendants' Motions to Dismiss Count One of the Indictment for Failure to State a Claim (docket nos. 73 and 76) are denied.

Defendants' Motions in Limine (docket nos. 85 and 88) are granted in part and denied in part as stated in open court on April 23, 2019.

Government's motion in Limine (docket no. 95) is granted in part and denied in part.

SIGNED this 24th day of April, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE